UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MIDWEST PUBLIC AUCTION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:12CV73 JAR |
| ) | |
| MOTORSPORTS OF BOWLING GREEN, ) | |
| INC. d/b/a HARLEY-DAVIDSON BOWLING ) | |
| GREEN, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Remand (ECF No. 11). This motion is fully briefed and ready for disposition.

## BACKGROUND

On or around November 29, 2011, Plaintiff Midwest Public Auction ("Midwest") and Defendant Motorsports of Bowling Green, Inc. d/b/a Harley Davidson Bowling Green ("HDBG") entered into a "Exclusive Action Listing Contract with Invoice Protection" (hereinafter, the "Agreement") for the sale of several motorcycles. (Petition, ECF No. 5, ¶5, Exhibit A). Pursuant to the Agreement, Midwest conducted an auction on December 11, 2011, and the motorcycles were sold to various buyers. (Petition, ¶¶6, 14). The Agreement required that HDBG provide Midwest the necessary paperwork to transfer ownership of the motorcycles no more than ten (10) business days after the auction. (Petition, ¶9, Exhibit A, ¶11). Midwest alleges that HDBG failed to provide Midwest with necessary paperwork to transfer ownership of the motorcycles within 10 days of the auction, thereby breaching the Agreement. (Petition, ¶11). Midwest states that due to HDBG's breach, Midwest has been unable to transfer title of the motorcycles to the buyers and now Midwest is subject "to potential liability to each and every buyer at the auction." (Id., ¶18).

Midwest filed a breach of contract action in the Circuit Court of Butler County, Missouri on or around April 20, 2012. (ECF No. 5). Therein, Midwest asks for "judgment against Defendant for specific performance of the contract, ordering Defendant to provide all documents necessary to transfer ownership of the [motorcycles]; for judgment [in] an amount in excess of twenty-five thousand dollars ($25,000) which represents the commission, the buyer's premium, sales related costs and reasonable attorney fees; or in the alternative in an amount in excess of twenty-five thousand dollars ($25,000) to cover any and all of Plaintiff's liability to purchasers at the auction, and for such other relief as the court deems just and proper in the premises." (Petition, pp. 3-4).

On May, 4, 2012, HDBG removed the lawsuit to this Court. (ECF No. 1). HDBG asserts that this Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because this is a controversy between citizens of different states and the matter in controversy exceeds the sum or value of $75.000, exclusive of interest and costs.

On June 1, 2012, Plaintiff filed a Motion to Remand (ECF No. 11). Plaintiff asserts that amount in controversy does not exceed $75,000, exclusive of interest and costs. In the alternative, Plaintiff claims that the Agreement includes a valid forum selection clause, which sets jurisdiction in Butler County, Missouri and precludes removal.

**LEGAL STANDARD FOR MOTION TO REMAND**

Defendant, as the party seeking removal and opposing remand, has the burden of establishing federal subject matter jurisdiction. Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, 561 F.3d 904, 912 (8th Cir. 2009); In re Business Men's Assurance Co., 992 F.2d 181, 183 (8th Cir. 1993). Removal statutes are strictly construed, and any doubts about the correctness of removal are resolved in favor of state court jurisdiction and remand. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); In re Business Men's Assurance Co., 992 F.2d at 183; Manning v. Wal-Mart Stores East, Inc., 304 F. Supp. 2d 1146, 1148 (E.D. Mo. 2004) (citing Transit

Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 625 (8th Cir. 1997), cert. denied, 522 U.S. 1075, 139 L. Ed. 2d 753, 118 S. Ct. 852 (1998)).

**DISCUSSION**

**I.      Amount in Controversy**

In its Motion to Remand, Midwest claims that this Court lacks subject matter jurisdiction because the amount in controversy does not exceed the jurisdictional minimum.[1] See 28 U.S.C. §1332. A party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence. In re Minn. Mut. Life Ins. Co. Sales Practices Litig., 346 F.3d 830, 834 (8th Cir. 2003) "'The complaint will be dismissed if it appears to a legal certainty that the value of the claim is actually less than the required amount.'" Id. (quoting Trimble v. Asarco, Inc., 232 F.3d 946, 959 (8th Cir. 2000)). To satisfy the preponderance of the evidence standard, the party seeking removal must offer "some specific facts or evidence demonstrating that the jurisdictional amount has been met." Hill v. Ford Motor Co., 324 F. Supp. 2d 1028, 1036 (E.D. Mo. 2004).

HDBG asserts that the jurisdictional amount has been met. HDBG contends that the undisputed facts demonstrate that it would take in excess of $75,000 to cover Midwest's liability to the purchasers at the auction, as alleged in the Petition. (Defendant's Memorandum in Opposition to Plaintiff's Motion to Remand ("Response"), ECF No. 16, p. 2(citing Petition, Prayer for Relief)). HDBG notes that Midwest sold the motorcycles for a total of $86,900.00, and that the minimum authorized price under the Agreement for all of the motorcycles was $141,462.00. (Id.). Thus, Midwest would either be liable to the auction purchasers for either $141,462.00 or $86,900.00. (Response, p. 4).

---

[1]Both sides agree that there is diversity between the parties so the only issue is the amount in controversy.

Midwest, however, claims that HDBG's argument misconstrues the amount in controversy because it includes the value of the motorcycles, in which Midwest has no ownership interest. Midwest contends that it does not seek to "receive any part of the $141,462.00 value of the motorcycles." (Memorandum in Support of Plaintiff's Motion to Remand ("Memorandum"), ECF No. 12, p. 6). Rather, the amount in controversy is, at most, $12,166.00 (its commission, $7,821.00, and attorney's fees, $4,345.00). (Memorandum, p. 4). Midwest would only be entitled to receive "(1) possession of the motorcycle title documents ..., (2) its commission, (3) its claim for damages and expenses incurred at the auction, and (4) its contractual attorney's fees." (Memorandum, p. 4). Midwest argues that viewing the amount in controversy to be $141,462.00 or $86,900.00 incorrectly views the controversy from the perspective of HDBG or the motorcycle buyers, instead of Midwest. (Plaintiff's Reply Memorandum to Defendant's Memorandum in Opposition to Plaintiff's Motion to Remand ("Reply"), ECF No. 17, p. 4). Midwest also contends that HDBG cannot include attorney's fees provided by the Agreement because only statutory attorney fees count towards the jurisdictional minimum amount. (Memorandum, pp. 4-5). Finally, Midwest claims that its purported liability to "each and every buyer at the auction" cannot be used in calculating the amount in controversy because such future litigation is too speculative. (Id., p. 5).

The Court find that the jurisdictional amount has been satisfied by the preponderance of the evidence. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977). Midwest alleges that it could be exposed to liability for its failure to deliver the motorcycles to the buyers at the auction. The parties have stipulated that the value of these motorcycles is $141,462.00 or, at least, $86,900.00. Even though Midwest disavows any interest in the $141,462.00 value of the motorcycles, Midwest's potential liability can be considered in determining the amount in

controversy because it included a request for indemnification in its prayer for relief. Petition, prayer for relief; see Scottsdale Ins. Co. v. Universal Crop Prot. Alliance, LLC, 620 F.3d 926, 932 (8th Cir. 2010) (in a declaratory judgment action, wherein an insurer sues an insured to determine its obligation to defend and indemnify, the amount in controversy equals the probable costs of defense and indemnification of the underlying litigation less any applicable deductible)[2]; Mendota Ins. Co. v. Mills, No. 4:12-CV-151, 2012 U.S. Dist. LEXIS 83246, at *4 (E.D. Mo. June 15, 2012)(same). In addition, the Court finds that this potential liability is not so speculative or uncertain that it cannot be considered for the jurisdictional amount. Midwest's potential liability to the auction buyers is either the value of the motorcycles, $141,462.00, or the amount the purchasers paid at auction, $86,900.00, both of which clearly are above the jurisdictional requirement. The cases cited by Midwest are inapposite because the potential liability of the plaintiffs in subsequent court proceedings was indeterminate. See Reply, pp. 5-6 (citing Elgin v. Marshall, 106 U.S. 578, 579-80 (1883); Wabash R. Co. v. Vanlandingham, 53 F.2d 51, 52 (8th Cir. 1931)(the court noted that the "contract did not fix the measure of damages for its breach"); Advance Am. Servicing of Ark., Inc. v. McGinnis, 526 F.3d 1170, 1174-76 (8th Cir. 2008)(affirming the district court's refusal to include costs of plaintiff's potential exposure in an uncertified class action in state court and its increased costs in defending such a suit compared to the two party arbitration in the instant lawsuit).

---

[2] Midwest claims that Scottsdale Ins. Co. is inapplicable because it involves an insurance company's duty to defend/indemnify. (Reply, p. 7). Midwest, however, does not explain why case law from the insurance context is irrelevant. Because Midwest seeks "to cover any and all of Plaintiff's liability to purchasers at the auction," the Court finds case law regarding indemnification, including in the insurance context, to be relevant and persuasive.

Based upon the foregoing, HDBG has established the amount in controversy in excess of $75,000 by the preponderance of the evidence, and the Court denies Midwest's motion for remand on this basis.[3]

## II.     Forum Selection Clause

In the alternative, Midwest claims that HDBG waived its right to remove this action to federal court by means of a forum selection clause in the Agreement. "A forum selection clause can act as a waiver of a defendant's right to remove an action to federal court." Magness Oil Co. v. Piedmont Fields, LLC, No. 3:11-CV-03104, 2012 U.S. Dist. LEXIS 71866, at *11 (W.D. Ark. May 23, 2012)(citing iNet Directories, LLC v. Developershed, Inc., 394 F.3d 1081 (8th Cir. 2005) (finding that a "contract's forum selection clause unambiguously prohibited [Defendant] from objecting to venue by removing the case to federal court")). However, "[w]aiver of the right to remove must be clear and unequivocal." Weltman v. Silna, 879 F.2d 425, 427 (8th Cir. 1989)(citing 1A J. Moore, B. Ringle & J. Wicker, Moore's Federal Practice para. 0.157[9] (2d ed. 1987)). "[D]istrict courts have construed Weltman [v. Silna] to state that 'a simple agreement that venue is proper in a particular court or jurisdiction is not a 'clear and unequivocal' waiver of the right to remove.'" Magness Oil Co., 2012 U.S. Dist. LEXIS 71866, at *12 (citing Mihlfeld & Assocs. v. Glock, Inc., No. 05-3085-CV-S-ODS, 2005 U.S. Dist. LEXIS 33485 at *4 (W.D. Mo. April 27, 2005)). "A forum selection clause need not, however, specifically mention removal in order for a

---

[3]Having found that HDBG established the jurisdictional amount by a preponderance of the evidence based upon Midwest's potential liability for the motorcycles alone, the Court need not address the parties' arguments regarding whether contractual attorney's fees can be considered for jurisdictional purposes.

waiver to be effected." Magness Oil Co., 2012 U.S. Dist. LEXIS 71866, at *12 (citing iNet Directories, 394 F.3d at 1081).[4]

The paragraph 12 of the Agreement provides, in relevant part:

Seller acknowledges and agrees that Missouri law shall apply to this transaction and to any dispute that may result from same. In the event of Court action initiated by either party, the parties agree that Missouri shall have exclusive jurisdiction and that the appropriate venue for all causes of action shall be Butler County, Missouri. Seller agrees to compensate Auctioneer for all legal fees and expenses associated with pursuing its rights pursuant to the Agreement.

Plaintiff argues that HDBG clearly and unequivocally waived its right to remove this action. Plaintiff contends that "[t]he first limitation, that 'Missouri shall have exclusive jurisdiction,' limits jurisdiction of this case exclusively to Missouri State Courts." (Memorandum, p. 8). Plaintiff claims that the plain meaning of the term "Missouri" means the "State of Missouri" because "it would not be a reasonable interpretation of the term 'Missouri' to include the federal government." (Id., p. 9; Reply, p. 10). Likewise, Plaintiff maintains that "the second limitation, that 'the appropriate venue for all causes of action shall be Butler County, Missouri,' expounds on the first limitation in that jurisdiction is not only limited to Missouri state courts, but the Missouri state circuit court within Butler County, Missouri." (Memorandum, p. 8). Alternatively, Plaintiff claims that the Court should view this as a "geographical limitation" to Butler County. (Reply, p. 11) (citing XGEL Tech., LLC v. C.I. Kasei Co., No. 4:09CV540 RWS, 2009 U.S. Dist. LEXIS 46459, at *4 (E.D. Mo. June 3, 2009)).[5]

---

[4]Midwest emphasizes the "heavy burden" that the party resisting enforcement of the forum selection clause bears. (Memorandum, p. 7 (citing Midwest Mechanical Contractors, Inc. v. Tampa Constructors, Inc., 659 F. Supp. 526, 530 (W.D. Mo. 1987)). Midwest's argument, however, presupposes that the Court construe the forum selection clause as precluding removal. The Court does not construe paragraph 12 of the Agreement to include a valid waiver of removal rights.

[5]In XGEL Tech., LLC, the forum selection clause provided, in part, that "[t]he parties agree to submit any judicial disputes to the appropriate courts in Phelps County, Missouri." The Court

The Court finds that the forum selection clause does not include a clear and unequivocal waiver of the right to remove. Here, the Agreement does not address removal and does not discuss the waiver of any rights. It simply discusses where the parties agree to jurisdiction and venue. "'Where the contract provides that the parties consent to the jurisdiction of state or federal court within a particular region, the agreement does not constitute waiver of a defendant's right to remove.'" XGEL Tech., LLC, 2009 U.S. Dist. LEXIS 46459, at *3 (quoting Newman/Haas Racing v. Unelko Corp., 813 F. Supp. 1345, 1347 (N.D. Ill. 1993)); Mihlfeld & Assocs., 2005 U.S. Dist. LEXIS 33485, at *4; Magness Oil Co., 2012 U.S. Dist. LEXIS 71866, at *12. The forum selection clause lacks the clear and unequivocal waiver of the right to removal found in other cases, such as iNet Directories.[6] Therefore, the Court finds that the Agreement does not clearly and unequivocally waive HDBG's right to remove this action. See Weltman, 879 F.2d at 427 (affirming district court's rejection of Weltman's claim that the appellees waived their right to remove where the agreement "did not address removal").

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Remand [11] is **DENIED**.

---

found this to be a "a geographical limitation and does not constitute a waiver of defendants' right to remove the case to this Court[.]" Id., at *4. The Court also rejected the plaintiff's argument "that the forum selection clause in the contract precludes removal[.]" Id. Thus, although Midwest relies on this case, it would seem to support HDBG's position that remand should be denied.

[6]In iNet, the forum selection clause stated that, "The Parties hereby irrevocably waive any and all objections which any Party may now or hereafter have to the exercise of personal and subject matter jurisdiction by the federal or state courts in the State of Missouri and to the laying of venue of any such suit, action or proceeding brought in any such federal or state court in the State of Missouri." iNet Directories, LLC, 394 F.3d at 1081. The Court interpreted this cause as prohibiting the defendant from objecting to venue by removing the case to federal court. Id., at 1082.

Dated this 6th day of November, 2012.

                                                                                                                           JOHN A. ROSS
                                                                                                                           UNITED STATES DISTRICT JUDGE